**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

_____

**In re:**

**Elite Model Management Corporation,**

**Debtor.**
_____

**Chapter 11 Case**
**Case No. 04-10845 (RDD)**

**MOTION FOR RULE**
**2004 EXAMINATION**

(1) Carolyn Fears, and the certified class of approximately 10,000 current and former models she represents (the "Fears Creditors"); (2) Maryanne Fletcher and a class of similarly situated current and former Elite models (the "Fletcher Creditors"); and (3) Angela Shelton, and a class of similarly situated current and former Elite models (the "Shelton Creditors", together with the Fears and Fletcher Creditors, the "Model Creditors"), each a creditor of the above-named Debtor and a party in interest in the above-captioned matter, will move before Hon. Robert D. Drain, Bankruptcy Judge, at Room 610, United States Bankruptcy Court, Alexander Hamilton Custom House, One Bowling Green, New York, New York 10004 on April 21, 2004 at 10:00 a.m. for an order directing **Gerald Marie, Alain Kittler, Mary Ann D'Angelico, Monique Pillard, Scott Lipps,** and **Diann Perrotta** to appear for a Rule 2004(a) examination at the offices of Boies, Schiller & Flexner LLP, at 570 Lexington Avenue, 16th Floor, New York, New York 10022, on the dates and at the times set forth in the attached Notice of Rule 2004 Examination.

The scope of the examination will be limited to the acts, conduct, property, liabilities and financial condition of the Debtor, any matter which may affect the administration of the Debtor's estate, the operation of any business and desirability of its continuance, source of money to be acquired for purposes of consummating a plan and

consideration given or offered therefore, and any other matter relevant to the case or to the formulation of a plan, including the Debtor's books, records, and accountant's report, and will include the topics set forth in the attached Schedule A.

The Model Creditors further request the Court to direct the issuance of subpoenas for the attendance of the witnesses at the examination and the production of documents as set forth in the attached Schedule B by April 26, 2004.

In order to examine the conduct and affairs of the Debtor and to discover assets belonging to the Debtor's estate, both of which may affect the administration of the Debtor's estate, the Model Creditors believe it necessary to conduct an examination of the above persons as soon as practically possible.

The Model Creditors further move for such other relief as is just and proper.

The undersigned has contacted opposing counsel, Robert T. Schmidt, Esq., who advises that he opposes this motion and will not agree to produce the documents described herein without a subpoena duces tecum pursuant to Fed. R. Bankr. P. 9016.

New York, New York
April 9, 2004

BOIES, SCHILLER & FLEXNER LLP

By: _____
Andrew W. Hayes (AH-2570)
Olav A. Haazen (OH-7788)
Christina M. Lewicky (CL-0666)
333 Main Street
Armonk, New York 10504
Tel: (914) 749-8200
Fax: (914) 749-8300

*Counsel for the Model Creditors*

## Schedule A

### Definitions

1.  Plaintiffs adopt and incorporate by reference the "Uniform Definitions in Discovery Requests" as specified in Local Civil Rule 26.3 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York ("Local Rules").

2.  "Model Creditors" include (a) Carolyn Fears, and the certified class of approximately 10,000 current and former models she represents (the "Fears Creditors"); (b) Maryanne Fletcher and a class of similarly situated current and former Elite models (the "Fletcher Creditors"); and (c) Angela Shelton, and a class of similarly situated current and former Elite models (the "Shelton Creditors", together with the Fears and Fletcher Creditors, the "Model Creditors").

3.  "You", "Your" and "Your company" refer to the Debtor.

4.  "Debtor" includes Elite Model Management Corporation and any of its wholly-owned or partially owned subsidiaries, and any company in which such entities currently have or, during the period of January 1, 1998 to the present, have had a financial interest, including but not limited to partnerships and joint ventures.

### Examination Topics

### Corporate Structure

1.      The ownership and corporate and organizational structure of Debtor and its affiliates, subsidiaries, parent companies, and business partners, including but not limited to the entire "Elite Network", including but not limited to Talent Network Group, Talent Network, Inc., Elite Model Management S.A., Elite Group (or Groupe) S.A., Group (or Groupe) Elite S.A., Elite Licensing, Inc., Elite Pacifica Group, Elite Chicago,

Elite L.A., Elite Miami, Osiris Limited, Hong Kong Global Investment Limited, Duke International, Elite Participations, and One Model Management, any other business using the trade name "Elite Model Management" or the round-style "Elite" logo, or using a URL that contains "elitemodel", and including any transactions relating to the ownership or organizational structure during January 1, 2000 to the present.

2.     The names and addresses of Debtor's officers, directors, stockholders, partners, and key employees, and the names of all other persons employed by the Debtor other than bookers and clerical staff.

3.     The Debtor's financial relationships with shareholders, creditors, officers, directors, and key employees from January 1, 2000 to the present, including but not limited to (a) all accounts, notes and other obligations payable to and receivable from shareholders, creditors, officer, directors and key employees of any of the entities associated with the Elite Network, (b) any indemnification agreements relating to any director or officer of the entities associated with the Elite Network, and (c) the Debtor's purchase or renewal of director and officer insurance for any of the officers and directors within the Elite Network.

4.     Any attorney's fees, and the total amount thereof, paid by Elite or any of its parent companies or other affiliates to any counsel for Debtor or any of the Debtor's directors, officers or key employees whose activities precipitated the Debtor's potential liability in the Fears, Shelton, Fletcher, and Gallegos cases during the period of January 1, 2002 to the present, including but not limited to attorney's fees paid to The Law Offices of Edward R. Curtin P.C., McLaughlin & Stern LLP, and Jenkens & Gilchrist Parker Chapin, LLP.

5.      The sale and purchase or resale of any stock, interests or assets in any

Elite entity by Gerald Marie, John Casablancas, Alain Kittler, or Christian Larpin (each

individually an "Owner"), any entity controlled by any Owner, or any group or

consortium led by any Owner, including but not limited to (i) any complaint,

counterclaim, pleadings, or correspondence relating to the litigation, in Malta or

elsewhere, between Larpin (or any entity controlled by Larpin or any group or

consortium led by Larpin) and any Elite entity, officer, director, agent or representative,

and (ii) Larpin's accusations that Gerald Marie and Alain Kittler are or were

mismanaging any of the Elite entities.

6.      The acquisition or divestiture of assets of any kind (other than purchases

or sales in the ordinary course of business at market prices) and the valuation of assets for

purposes of acquisition or divestiture or otherwise during the period from January 1, 1999

to the present.

## Contracts and Agreements to Transfer Funds or Withhold Funds from Creditors

7.      The names and addresses of all models and potential models who went

from Debtor or any of its affiliates to One Model Management, or any of its affiliates, or

vice versa during the period of January 2000 to the present, and all models represented,

and all bookers employed by the Debtor and by One Model Management as of (i) last

summer (or some other date before January 1, 2004), and (ii) the petition date (or some

date earlier this year).

8.      The existence, and the terms and conditions of any (a) oral or written

agreements and understandings between Debtor or any of its affiliates and Scott Lipps,

One Model Management or any of its affiliates to take over, transfer or share models, (b) oral or written fee-splitting or fee-sharing arrangement between and among Elite entities and/or Elite entities and Scott Lipps or One Model Management, and (c) practice or understanding between and among the Debtor, Scott Lipps, One Model Management, or any of their affiliates of paying, or not paying, a mother agency fee in consideration or as a result of any transfer or sharing of models.

9.      All commissions, fees, mother agency fees, and any other payments received or expected to be received by any affiliate of the Debtor, including but not limited to Talent Network Group, Talent Network, Inc., Elite Premier, Elite Luxemburg, Elite Malta, Elite Pacifica Group, Elite Licensing, Elite L.A., Elite Chicago, Elite Miami, Elite Participations, One Model Management, Duke International, Osiris Limited, Hong Kong Global Investment Limited, Elite Model Management S.A., Elite Group (or Groupe) S.A., Group (or Groupe) Elite S.A., for modeling jobs booked by or through the Debtor for Debtor's models, whether or not such jobs were to be or have been performed in Europe for a European or U.S. client.

10.      Any rules, policies, or guidelines (i) for sharing commissions between entities within the Elite Network, including licensees, and (ii) relating to transfers between and among entities within the Elite Network, including licensees, and the Swiss parent companies.

11.      Any transfers or payments between or among the Debtor and one or more of the members of the Elite Network, including but not limited to Elite Luxemburg, Elite Participations, Osiris, Elite Group (or Groupe) S.A., Group (or Groupe) Elite S.A., and Elite Model Management S.A., between January 1, 2000 and the present, and any oral or

written intercompany agreements to pay, dividends, loans, advances, funds, and transfers of products from January 1, 2000 to the present, and any schedules of transfers, copies of drafts, wire transfers, or book entries related thereto.

12.     Loans to, investments made in, and the purchase of shares of One Model Management during the period of 2000 to the present.

13.     Dividends and other distributions paid by the Debtor, or any of its affiliates or subsidiaries, to any capital stock holders, equity owners or partners, and purchases or redemptions of capital stock made or contemplated by the Debtor, or any of its affiliates or subsidiaries during the period of January 1, 2000 to the present.

14.     The payment or non-payment of any bonuses, commissions, or any type of incentive pay to any of Debtor's officers, directors, or key employees during the period of January 1, 2000 to the present.

15.     The payment or transfer of funds to any relative, partner, business partner, or friend of the Debtor and its officers, directors or key employees, or any of these persons' or entities' creditors, including but not limited to payments to Gerald Marie's daughter and the university she attends.

16.     The existence or non-existence and the amounts of blocked or restricted funds, including funds prohibited from transfer from foreign countries because of legal or other restrictions or from companies because of contractual restrictions, and funds subject to accounts in financial institutions to which the Debtor does not have unrestricted access.

17.     The bank, lender, or other financial institution where the Debtor maintains, or has during the period of January 1, 2003 to the present, a bank account.

18.     Any communications relating to the development, preparation or content of (a) restructuring of the Debtor's operations, (b) any liquidation analyses, (c) any proposed DIP financing, or (d) plan of reorganization, including but not limited to any business plans and previous versions thereof, whether prepared by the Debtor, Byron Hiro, any other potential investor or any of their financial advisors, any reports or notes relating to, or any actual or proposed presentations made to shareholders, employees, directors, banks, lenders, potential investors, or any financial advisor regarding the potential reorganization or restructuring of the Debtor.

19.     The valuation, within the last two years, of stock of Debtor's subsidiaries and all documents relating to the value, market value, fair market value, appraised value, sales value or liquidation value, within the last two years, of Debtor and each of its component parts, in connection with a corporate restructuring or reorganization, including but not limited to preliminary, draft and final reports, appraisals or analyses prepared by (a) investment bankers, investment advisors or appraisers, or (b) the financial staff, or any other employee, director, officer or shareholder of the Debtor or any of its affiliates.

20.     Any post-petition payments by the Debtor in excess of $100 to persons or entities in discharge of pre-petition indebtedness not heretofore specifically approved by the bankruptcy court.

21.     The Debtor's annual and quarterly financial statements for the period from January 1, 2003 through the present.

22.     The financial records, statements and books that the Debtor maintains or has maintained during the period of January 1, 2003 to the present and the name, title,

and address of any person persons who made or was authorized to make entries in such records, statements or books and of such person or persons.

23.     Whether, when and how frequently the Debtor's books and financial records were audited by a certified public accountant, and the name and address of such accountant.

24.     The location, address and present book, property tax and appraisal values of any real estate directly or indirectly owned by Debtor, including but not limited to the so-called models' apartments.

25.     Accounts receivable and accounts payable listings, including aging thereof, during 2003 and 2004.

26.     A list of notes or other obligations payable or receivable at any time, outstanding during the period of January 1, 2002 to the present.

## Other Financial Data

27.     The Debtor's cash flow from January 1, 2003 to the present, including without limitation cash flow projections through the present and capital budgets.

28.     Any revolving credit arrangements or agreements with any bank, lender, of financial institution.

29.     Tax returns or other filings made with United States, New York State, New York City, or any other governmental entities or agencies for or during the years 2000 to the present.

30.     Analyses of the current and deferred income tax provision and liability accounts for the years 2000 through the present.

## Schedule B

## Definitions

1.   The Model Creditors adopt and incorporate by reference the "Uniform Definitions in Discovery Requests" as specified in Local Civil Rule 26.3 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York ("Local Rules").

2.   "Model Creditors" include (a) Carolyn Fears, and the certified class of approximately 10,000 current and former models she represents (the "Fears Creditors"); (b) Maryanne Fletcher and a class of similarly situated current and former Elite models (the "Fletcher Creditors"); and (c) Angela Shelton, and a class of similarly situated current and former Elite models (the "Shelton Creditors", together with the Fears and Fletcher Creditors, the "Model Creditors").

3.   "You", "Your" and "Your company" refer to the Debtor.

4.   "Debtor" includes Elite Model Management Corporation and any of its wholly-owned or partially owned subsidiaries, and any company in which such entities currently have or, during the period of January 1, 2000 to the present, have had a financial interest, including but not limited to partnerships and joint ventures.

## Instructions

1.   Documents shall be produced as they are kept in the usual course of business or segregated as responsive to a specific request.  Documents attached to each other should not be separated.

2.   If more than one copy of a responsive document exists, produce each copy that includes (a) any notations or markings not on other copies, including handwritten notations or routing or filing instructions; (b) attachments not included as part of other copies.

3.  If You object to any part of these Document Requests, please (a) state each objection You assert in sufficient detail to permit the Court to determine the validity of the objection; and (b) produce all responsive documents and information to which Your objection does not apply.

4.  If You withhold information or documents (including attachments to documents) responsive to these Document Requests based upon any claim of privilege, provide a log or index sufficient to comply with Local Rule 26.2.

5.  To the extent responsive documents or data are maintained in an electronic format, including, but not limited to, on a disk, tape or other magnetic or machine-readable format, please produce the electronic version along with manuals and all other documents sufficient to operate, display, read and interpret the programs, documents or data.

6.  If You claim that all or any part of any Document Request is vague or ambiguous, please identify the specific language You consider vague or ambiguous and state the interpretation of the language in question You used to frame Your response.

7.  If any documents requested herein have been lost, discarded, destroyed, or are otherwise no longer in Your possession, custody or control, or have been transferred voluntarily or involuntarily to another person or persons, or otherwise disposed of, they shall be identified as completely as possible including, but not limited to, information necessary to identify the document and the following information:  the date of disposal or transfer; the manner of disposal or transfer; the reason for disposal or transfer; the person authorizing the disposal or transfer; and the person disposing of or transferring the document.

8.  Unless otherwise stated, these Document Requests cover the period, and include documents created during or relating to the period, from January 1, 1998 through the present.

## Documents Requested

### Corporate Structure

1.      Documents sufficient to show the ownership and organizational structure

of Debtor and each of its affiliates, subsidiaries, parent companies, and business partners,

including but not limited to the entire "Elite Network", including but not limited to Talent

Network Group, Talent Network, Inc., Elite Model Management S.A., Elite Group (or

Groupe) S.A, Group (or Groupe) Elite S.A., Elite Licensing, Inc., Elite Chicago, Elite

L.A., Elite Miami, Osiris Limited, Hong Kong Global Investment Limited, Duke

International, Elite Participations, Elite Pacifica Group, and One Model Management,

any other business using the trade name "Elite Model Management" or the round-style

"Elite" logo, or using a URL that contains "elitemodel",  and including any transactions

relating to the ownership or organizational structure during January 1, 2000 to the

present.

2.      Documents sufficient to show the names and addresses of the officers,

directors, stockholders, partners, and key employees of each of the entities identified in

the preceding request, and the names of all other persons employed by the Debtor other

than bookers and clerical staff.

3.      All documents (i) upon which Gerald Marie based in testimony in the

Gallegos case regarding the ownership interests in the Debtor and its parent companies

held by Osiris Ltd.; (ii) referred to in creating the chart provided to creditors on March 2,

2004; (iii) upon which the Debtor based its representation that the Elite Network's

ultimate holding company is Elite Luxemburg; (iv) sufficient to show all ownership

interests in Elite Luxemburg, including but not limited to Duke International, Elite

Participations, the Debtor's president Gerald Marie and Alain Kittler; (v),sufficient to show Hong-Kong Global Investment Limited's ownership interests in, or affiliation with the Elite Network; and (vi) all other documentss that set forth the ownership or affiliation between members of the Group.

4.      Documents which reflect the Debtor's financial relationships with shareholders, creditors, officers, directors, and key employees from January 1, 2000 to the present, including but not limited to (a) all accounts, notes and other obligations payable to and receivable from shareholders, creditors, officer, directors and key employees of any of the entities associated with the Elite Network, (b) any indemnification agreements relating to any director or officer of the entities associated with the Elite Network, and (c) the Debtor's purchase or renewal of director and officer insurance for any of the officers and directors within the Elite Network.

5.      Documents sufficient to show any attorney's fees, and the total amount thereof, paid by Elite or any of its parent companies or other affiliates to any counsel for Debtor or any of the Debtor's directors, officers or key employees whose activities precipitated the Debtor's potential liability in the Fears, Shelton, Fletcher, and Gallegos cases during the period of January 1, 2002 to the present, including but not limited to attorney's fees paid to The Law Offices of Edward R. Curtin P.C., McLaughlin & Stern LLP, and Jenkens & Gilchrist Parker Chapin, LLP.

6.      Documents relating to the sale and purchase or resale of any stock, interests or assets in any Elite entity by Gerald Marie, John Casablancas, Alain Kittler, or Christian Larpin (each individually an "Owner"), any entity controlled by Owner, or any group or consortium led by any Owner, including but not limited to (i) any

correspondence between Larpin, any other Owner, or any of their agents or

representatives, and any Elite entity, officer, director, agent or representative, (ii) any

complaint, counterclaim, pleadings or correspondence relating to the litigation, in Malta

or elsewhere, between Larpin (or any entity controlled by Larpin or any group or

consortium led by Larpin) and any Elite entity, officer, director, agent or representative,

including but not limited to Gerald Marie, John Casablancas, and Alain Kittler, and (iii)

any documents relating to Larpin's accusations that Gerald Marie and Alain Kittler are or

were mismanaging any of the Elite entities.

7.      Documents reflecting, effecting or relating to, between January 1, 1999

and the present, (a) the acquisition or divestiture of assets of any kind (other than

purchases or sales in the ordinary course of business at market prices) and (b) the

valuation of assets described in (a) for purposes of acquisition or divestiture or otherwise.

## Contracts and Agreements to Transfer Funds or Withhold Funds from Creditors

8.      Documents reflecting (a) the names and addresses of all models and

potential models who changed their representation from Debtor or any of its affiliates to

One Model Management, or any of its affiliates, or vice versa, from January 1, 2000 to

the present, (b) a full list of models represented by the Debtor and by One Model

Management as of (i) last summer (or some other date before January 1, 2004), (ii) the

petition date (or some date earlier this year), and (iii) today, indicating which of such

models have written contracts, (c) a list of the bookers employed by the Debtor and One

Model Management respectively, on each of the above-mentioned occasions, (d) oral or

written agreements and understandings between Debtor or any of its affiliates and Scott

Lipps, One Model Management or any of its affiliates to take over, transfer or share models, (e) any oral or written fee-splitting or fee-sharing arrangement between and among Elite entities and/or Elite entities and Scott Lipps or One Model Management, and (f) whether or not the Debtor, Scott Lipps, One Model Management, or any of their affiliates were paid a mother agency fee in consideration or as a result of any transfer or sharing of models.

9.      Documents sufficient to show every commission, fee, mother agency fee, service charge, or any other payment received or expected to be received by any affiliate of the Debtor, including but not limited to Talent Network Group, Talent Network, Inc., Elite Premier, Elite Luxembourg, Hong Kong Global Investment Limited, Osiris Limited, Elite Malta, Elite Miami, Elite L.A., Elite Participations, Elite Licensing, Elite Pacifica Group, Elite Model Management S.A., Elite Group (or Groupe) S.A., Group (or Groupe) Elite S.A., for modeling jobs booked by or through the Debtor, whether or not such jobs were to be or have been performed in Europe for a European or U.S. client.

10.     Any documents written by any employee or director of any member of the Elite Group setting forth, defining or discussing (i) any oral or written fee-splitting or fee-sharing arrangement between and among Elite entities, including licensees, and (ii) rules, policies, or guidelines for sharing commissions between entities within the Elite Network, including licensees, and (iii) rules, policies, or guidelines relating to transfers between and among entities within the Elite Network, including licensees, and the Swiss parent companies.

11.     Documents, including but not limited to the intercompany account ledger(s), sufficient to show (a) any transfers or payments between or among the Debtor

and one or more of Elite Model Management S.A., Elite Group (or Groupe) S.A., and Group (or Groupe) Elite S.A., or any other members of the Elite Network, including Elite Luxemburg, Elite Participations and Osiris, (b) the total amount of fees, commissions, income or any other monies paid by the Debtor to any of its parent companies, affiliates, subsidiaries, or licensees and vice versa, and (c) the balance of these payments (indicating whether Elite, on balance, receives more than it pays or vice versa), each during the period from January 1, 2000 to the present.

12.   Documents sufficient to show (a) any loans to, investments made in, or purchases of shares of One Model Management during the period of 2000 to the present, (b) any intercompany payments of dividends, loans, advances, or funds, and transfers of products from January 1, 2000 to the present, including schedules of transfers, copies of draft, wire transfers, and book entries, and (c) any oral or written intercompany agreements regarding the above purchases, payments, or transfers.

13.   Documents reflecting or sufficient to show the payment or non-payment by the Debtor, or any of its affiliates or subsidiaries of any dividends or other distributions to, and any purchases or redemptions of capital stock made by the Debtor, or any of its affiliates or subsidiaries from, any capital stock holders, equity owners or partners, during the period of January 1, 2000 to the present.

14.   Documents reflecting or sufficient to show (a) the payment or non-payment of any bonuses, commissions, or any type of incentive pay to any of the Debtor's officers, directors, or key employees, and (b) any payment or transfer of funds by the Debtor to any relative, partner, business partner, friend, or acquaintance of the Debtor and its officers, directors or key employees, or any of these persons' or entities'

creditors, including but not limited to Gerald Marie's daughter and the university she attends, during the period of January 1, 2002 to the present.

15. Documents showing the detail and support of blocked or restricted funds, including funds prohibited from transfer from foreign countries because of legal or other restrictions or from companies because of contractual restrictions, or funds subject to accounts in financial institutions to which the Debtor does not have unrestricted access.

16. Documents sufficient to show any banks, lenders, or other financial institutions where the Debtor maintains, or at any time during the period of January 1, 2003 to the present has maintained a bank account.

17. Documents relating to the development, preparation or content of (a) restructuring of the Debtor's operations, (b) any liquidation analyses, (c) any proposed DIP financing, or (d) plan of reorganization, including but not limited to any business plans and previous versions thereof, whether prepared by the Debtor, Byron Hiro, any other potential investor or any of their financial advisors, any reports or notes relating to, or any actual or proposed presentations made to shareholders, employees, directors, banks, lenders, potential investors, or any financial advisor regarding the potential reorganization or restructuring of the Debtor.

18. Documents reflecting the valuation of stock, within the last two years, of Debtor's subsidiaries and all documents relating to the value, market value, fair market value, appraised value, sales value or liquidation value, within the last two years, of Debtor and each of its component parts, in connection with a corporate restructuring or reorganization, including but not limited to preliminary, draft and final reports, appraisals or analyses prepared by (a) investment bankers, investment advisors or appraisers, or (b)

the financial staff, or any other employee, director, officer or shareholder of the Debtor or any of its affiliates.

19.   Any annual and quarterly financial statements for the period from January 1, 2003 through the present.

20.   Documents sufficient to show what financial records, statements or books are being maintained or have been maintained during the period of January 1, 2003 to the present, including the person or persons who made or was authorized to make entries in such records, statements or books and name, title, and address of such person or persons.

21.   Documents sufficient to show whether, when and how frequently the Debtor's books and financial records were audited by a certified public accountant, and the name and address of such accountant.

22.   Any accountant's papers regarding, referring to, or reflecting the Debtor's financial affairs, its books and financial records, including any accountant's report.

23.   Documents sufficient to show the location, address and book, appraisal or property tax value of real estate directly or indirectly owned by Debtor, including but not limited to so-called models' apartments.

24.   Accounts receivable and accounts payable listings, including aging thereof, during 2003 and 2004.

25.   A list of notes or other obligations payable or receivable at any time, outstanding during the period of January 1, 2002 to the present.

26.   Documents relating to any post-petition payments in excess of $100 to persons or entities in discharge of pre-petition indebtedness not heretofore specifically approved by the bankruptcy court.

## **Other Financial Data**

27.    Documents sufficient to show Debtor's cash flow from January 1, 2003 to the present, including without limitation cash flow projections through the present and capital budgets.

28.    Any of the Debtor's operating reports, monthly, annual, or periodical.

29.    Any revolving credit arrangements or agreements with any bank, lender, of financial institution.

30.    Tax returns or other filings made with United States, New York State, New York City agencies, or any other governmental entities or agencies for or during the years 2000 to the present, whether or not on a consolidated basis.

31.    Analyses of the current and deferred income tax provision and liability accounts for the years 2000 through the present.