Hearing Date: July 28, 2004 @ 10:00 a.m. EDT
Objection Deadline: July 26, 2004 @ 5:00 p.m. EDT

SEYFARTH SHAW LLP
1270 Avenue of the Americas
Suite 2500
New York, New York 10020-1801
Tel: 212-218-5554
Fax: 212-218-5526
Andrew T. Hahn, Sr., Esq.

SEYFARTH SHAW LLP
55 East Monroe Street, Suite 4200
Chicago, Illinois 60603
Tel: (312) 346-8000
Fax: (312) 269-8869
William J. Factor, Esq.
Sara E. Lorber, Esq

Attorneys for Stewart Talent Management Corporation

UNITES STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------------X
In re:                                     :    Chapter 11
                                           :
Elite Model Management Corporation,        :    Case No. 04-10845 (RDD)
                                           :
                        Debtor.            :
                                           :
------------------------------------------------------------X
```

## PRELIMINARY AND LIMITED OBJECTION OF STEWART TALENT MANAGEMENT CORPORATION TO MOTION FOR ORDERS (I) APPROVING BIDDING PROCEDURES, INCLUDING A BREAK-UP FEE AND EXPENSE REIMBURSEMENT; (II) APPROVING REPLACEMENT POST PETITION FINANCING; (III) SCHEDULING A SALE APPROVAL HEARING; (IV) APPROVING FORM AND MANNER OF NOTICE; (V) AUTHORIZING AND APPROVING (A) PURCHASE AGREEMENT WITH EMMCAC, LLC SUBJECT TO HIGHER AND BETTER OFFERS, (B) SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS; AND (C) GRANTING RELATED RELIEF

CH1 10735514.1

Stewart Talent Management Corporation ("Stewart Talent"), by and through undersigned counsel, on a preliminary and limited basis, hereby objects to the Motion for Orders (I) Approving Bidding Procedures, Including a Break-Up Fee and Expense Reimbursement; (II) Approving Replacement Post Petition Financing; (III) Scheduling a Sale Approval Hearing; (IV) Approving Form and Manner of Notice; (V) Authorizing and Approving (A) Purchase Agreement with EMMCAC, LLC Subject to Higher and Better Offers, (B) Sale of Substantially All of the Debtor's Assets Free and Clear of Liens, Claims, Encumbrances and Other Interests; and (C) Granting Related Relief (the "Sale Motion"), and in support thereof state as follows:

## BACKGROUND

### A.   The Sale Motion

1.   On or about July 14, 2004, debtor Elite Model Management Corporation ("Debtor") filed the Sale Motion seeking, *inter alia*, authority to sell substantially all of Debtor's assets (the "Assets") at auction, including:

> (b)   All contracts, leases, licenses and other agreements to which the Seller is a party related to the Business (collectively the Contracts) identified on <u>Schedule 2.1(b)</u> (the "Purchased Contracts"); . . .
>
> (e)   The Seller's equity interest in Seller's subsidiaries listed on the annexed <u>Schedule 2.1(e)</u> (the "<u>Subsidiaries</u>").

Asset Purchase Agreement, dated July 9, 2004 (emphasis in original). A copy of the Asset Purchase Agreement is attached as Exhibit B to the Sale Motion. Neither Schedule 2.1(b) or Schedule 2.1(e) were attached to the Asset Purchase Agreement filed with the Sale Motion.[1]

2.   In the Sale Motion, Debtor also seeks authority to assume and assign certain unidentified executory contracts. Debtor proposes that said assumption and assignment will be

---

[1]   On information and belief, Debtor's shares in Elite Chicago are part of the Assets included in the proposed sale. These shares are not identified as "Excluded Assets" in the Asset Purchase Agreement.

2

subject to Debtor's obligation to cure all monetary defaults under the contracts at issue. The Sale

Motion, however, makes no provision for curing non-monetary defaults.

3.      Pursuant to § 363(f), the Sale Motion seeks to sell Debtor's Assets free and clear

of all liens, claims, encumbrances and interests other than those expressly permitted by the Asset

Purchase Agreement.

4.      EMMCAC, LLC is the stalking horse bidder for the Assets, and it has agreed to

purchase the Assets for $5 million (the "Purchase Price"). The Sale Motion does not apportion

the Purchase Price to the various Assets included in the sale.

**B.      Elite Model Management Corp.**

5.      On or about May 31, 1983, Stewart Talent, Jane Stewart (owner of Stewart

Talent), Debtor and John Casablancas entered into an agreement (the "Shareholder Agreement"),

pursuant to which the parties agreed to form an Illinois corporation to engage in the modeling

agency and model management business in Chicago. The Debtor and prospective purchasers

should have a copy of the Shareholder's Agreement. Relevant portions of the Shareholder

Agreement are set forth herein and a complete copy thereof is available upon request.

6.      In July 1983, pursuant to the Shareholder Agreement, Debtor and Stewart Talent

formed Elite Model Management Corp. ("Elite Chicago"). Debtor and Stewart Talent each own

50% of Elite Chicago's outstanding shares, as provided for in the Shareholders' Agreement,

which states: "The outstanding shares of the Corporation shall, at all times (unless otherwise

agreed upon in writing) be issued 50% to Stewart Talent and 50% to Elite [Debtor]."

Shareholder Agreement, ¶ 1. The Shareholder Agreement further provides:

> Restrictions on Transfer. Elite and Stewart Talent agree that they
> will not pledge or hypothecate their shares of common stock of the
> Corporation without the prior written consent of the other. In the
> event one or the other of the shareholders desires to sell all, but not

3

> less than, all of its shares, the other shall have the right of first refusal to purchase such shares upon the same terms and conditions as offered to a bona fide third party. The terms of such offer shall be set forth in a written notice to the other shareholder, which notice shall set forth the name of the purchaser, the consideration to be paid for the shares to be purchased, the terms of payment therefore and any other material terms of the transaction.

Shareholder Agreement, ¶ 2.

7.     The Elite Chicago Stock Certificates contain the following restrictive legend: "The transfer of the shares covered by this Stock Certificate are restricted as more fully described in that certain Agreement dated May 31, 1983." Exhibit B.

## OBJECTIONS TO SALE MOTION

8.     To the extent that Debtor seeks to sell its shares of Elite Chicago, Stewart Talent objects to the Sale Motion on the following grounds: (1) sale of the shares requires written consent from Stewart Talent, which was not obtained by Debtor and which is not recognized in the Sale Motion;  (2) Stewart Talent has a right of first refusal that is not recognized in the Sale Motion; (3) Debtor has failed to satisfy the notice requirements of the Shareholder Agreement; namely, providing Stewart Talent with notice of the specific consideration offered by EMMCAC for the shares; (4) any agreement for the sale of the shares must provide that the buyer is subject to the Shareholder Agreement and all related agreements, including that certain Licensing Agreement, dated May 1983; and (5) Debtor is required under the Bankruptcy Code to cure all defaults, not just its monetary defaults, in order to assume executory contracts to which Stewart Talent is a party.

## A.     The Restrictions Contained in the Shareholder Agreement are Enforceable

9.     The existence and nature of a debtor's interest in property is determined by non-bankruptcy law, usually state law. *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914 (1979)

4

("property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding."); *In re Ames Dep't Stores,* 287 B.R. 112, 123 (Bankr. S.D.N.Y., 2002) ("Ordinarily, bankruptcy courts look to state law to determine whether a particular interest is 'property' for purposes of bankruptcy"). The filing of a bankruptcy petition does not expand a debtor's rights with regard to the trust property, and the estate takes the debtor's assets subject to all limitations and conditions that existed on the property, pre-petition. *In re Schauer,* 835 F.2d 1222, 1225 (8th Cir. 1987); *In re Farmer's Markets, Inc.,* 792 F.2d 1400, 1402-03 (9th Cir. 1986); *In re Billingsley,* 276 B.R. 48, 53 (Bankr. D.N.J. 2002).

10.     Debtor's shares in Elite Chicago are subject to the Shareholder Agreement, which, as noted above, requires Debtor to obtain the consent of Stewart Talent before selling its shares to a third party. The Shareholder Agreement also grants Stewart Talent a right of first refusal.

11.     The Shareholder Agreement is governed by Illinois Law (Shareholder Agreement, ¶ 15), and restrictions on transfer of shares of securities, such as those contained in the Shareholder Agreement, are specifically allowed in Illinois by statute. Section 6.55 of the Business Corporation Act of 1983 (the "BCA") provides:

> (c) A restriction on the transfer of securities of a corporation is permitted by this Section if it:
>
> > (1) obligates the holder of the restricted securities to offer to the corporation or to any other holders of securities of the corporation or to any other person or to any combination of the foregoing, a prior opportunity, to be exercised within a reasonable time, to acquire the restricted securities; or

5

(2) obligates the corporation or any holder of securities of the corporation or any other person or any combination of the foregoing, to purchase the securities which are the subject of an agreement respecting the purchase and sale of the restricted securities; or

(3) requires the corporation or the holders of any class of securities of the corporation to consent to any proposed transfer of the restricted securities or to approve the proposed transferee of the restricted securities; or

(4) prohibits the transfer of the restricted securities to designated persons or classes of persons, and such designation is not manifestly unreasonable.

805 ILCS 5/6.55(c).

12.     Courts have consistently held that such restrictions are enforceable in bankruptcy.[2] For example, in *In re Baquet*, 61 B.R. 495 (Bankr. D. Mont, 1986), a case similar to the instant case, the trustee sought to sell the debtor's shares in a closely-held family corporation to a third party, and the other shareholders objected. In connection with the formation of the corporation, the debtor and other shareholders entered into a restrictive stock agreement providing that, except for transfers to family members, a transferee must give the other shareholders the first option to purchase the shares at the value set by the annual shareholders meeting, and in the event the shareholders refuse to buy, then the corporation could purchase the stock. *Id.* at 497. The court held that the restrictions in the stock agreement were enforceable, and that the trustee could not sell the shares to the third party before first offering them to the other shareholders and corporation at the predetermined price. *Id.* at 500. *See also In re Farmer's Markets, Inc.*, 792 F.2d 1400 (9th Cir. 1986) (state statute which placed limitation on

---

[2]     The well-established exception to enforcement are both pre-bankruptcy and post-bankruptcy forfeitures and restraints based upon either the debtor's bankruptcy filing itself, the debtor's insolvency, or the debtor's financial condition. *See* 11 U.S.C. §§ 363(1), 365(e) and (f), 541(c)(1) and 1142. The restrictions imposed by the Shareholder Agreement do not fall into this class of forfeitures and restraints, and thus this exception is not applicable here.

6

the transfer of a liquor license was binding on a trustee in bankruptcy); *In re Six*, 190 B.R. 958 (Bankr. M.D. Fla. 1995) (stock restriction and retirement agreement governing transfer of Chapter 7 debtor's stock in medical professional association was binding on buyer of stock at trustee's sale; thus, any bidder would have to concede right of first refusal of professional association's members who were contractually entitled to repurchase the stock when it was sold); *In re Todd*, 118 B.R. 432 (Bankr. D.S.C. 1989) (enforcing right of first refusal in partnership agreement).

13.    Such restrictions are enforceable even where a non-debtor party has the right to veto a particular transfer of the debtor's assets. In *Schauer*, the Eighth Circuit addressed whether the trustee could transfer patronage margin certificates of a farm cooperative without the cooperative's approval. Like a stock certificate, the patronage margin certificates are evidence of the ownership and interest in the cooperative and in the patron's revolving fund. 835 F.2d at 1223. The cooperative's by-laws provided for redemption and barred any assignment of interest in the revolving fund without the consent of the board of directors. *Id.* at 1223-34. The trustee requested the board of directors of the cooperative to consent to the assignment of the certificates to third parties, but the board refused in accordance with its standard business practice. *Id.* at 1224. The trustee sought the aid of the court to compel the transfer, but the court correctly held that the trustee acquired the certificates subject to the cooperative's by-laws and could not transfer or assign them without the consent of its board of directors. *Id.* at 1225. *See also Chicago Board of Trade v. Johnson*, 264 U.S. 1, 44 S.Ct. 232 (1924) (seat in the stock exchange, while transferable, cannot be transferred without the approval of the Board of Exchange); *In re Cedar Chem. Corp*, 294 B.R. 224 (Bankr. S.D.N.Y. 2003) (assignment of task force agreement was unenforceable under § 365(c) because task force agreement required members to consent in

7

CH1 10735514.1

writing to assignment and consent was not obtained); *In re Schick*, 235 B.R. 318 (Bankr.

E.D.N.Y., 1999) (§ 365(c)(1) prevents the assignment of partnership membership unless the

other partners agree to a substitute limited partner pursuant to the partnership agreement).

14.    As demonstrated, Debtor must obtain Stewart Talent's consent prior to

transferring the Elite Chicago shares and Stewart Talent must also be allowed the right of first

refusal.  By this objection, Stewart Talent seeks to reserve its rights under the Shareholder

Agreement, and asks that any order entered by the Court acknowledge these rights, and authorize

the sale of Debtor's shares in Elite Chicago subject to Stewart Talent's rights under the

Shareholder Agreement.

**B.    Any Purchaser of the Elite Chicago Shares Will Be Subject to the Terms and Conditions of the Shareholder Agreement**

15.    Further, any order entered by this Court with respect to the Sale Motion should

provide that the purchaser of Debtor's shares in Elite Chicago will be subject to the terms and

conditions of the Shareholder Agreement.  Because such restriction is enforceable under Illinois

law (*see* § 7.71 of the BCA)[3], it is also enforceable in bankruptcy.  Further, it would be highly

inequitable to allow a third party to obtain the benefits of the Elite Chicago shares without also

assuming the attendant obligations set forth in the Shareholder Agreement.  The Bankruptcy

Code clearly seeks to prevent such inequitable results by requiring debtors who wish to retain the

---

[3]    Section 7.71 provides:

> (b)  An agreement created pursuant to this Section is ineffective against any shareholder not a party to the agreement unless:
>
> > (1)  such shareholder had actual knowledge of the agreement at the time of becoming a shareholder; or
> >
> > (2)  the existence of the agreement is conspicuously referred to (i) on the certificate representing the security; or (ii) on the notice sent pursuant to Section 6.35 in the case of any uncertified security.

805 ILCS 5/7.71.

8

benefits of executory contracts to also assume their obligations as well. *Malinowski v. New York Sate DOL (In re Malinowski)*, 156 F.3d 131 (2d Cir. 1998).

## C.    Debtor Must Cure All Defaults Under Its Executory Contracts – Not Just Non-Monetary Defaults

16.    In the Sale Motion, Debtor proposes to cure only its monetary defaults under the executory contracts it seeks to assume and assign. Section 365(b), however, requires that a debtor cure all defaults other than those specifically excluded under § 365(b)(2)(D) as a prerequisite to assuming its executory contracts, *including non-monetary defaults. In re New Breed Realty Enters.*, 278 B.R. 314, 321 (Bankr. E.D.N.Y. 2002); *see also Worthington v. General Motors Corp. (In re Claremont Acquisition Corp., Inc.)*, 113 F.3d 1029, 1033-34 (9th Cir. 1997); *In re Williams*, 299 B.R. 684, 686 (Bankr. D. Ga. 2003); *In re Carterhouse, Inc.*, 94 B.R. 271, 273 (Bankr. D. Conn. 1988).

17.    Thus, any order approving the assumption and assignment of any executory contracts to which Elite Chicago is a party must provide that Debtor will cure all defaults, monetary and non-monetary, except those specifically excepted from cure under § 365(b)(2)(D).

WHEREFORE, Stewart Talent respectfully requests that: (1) the Court deny the Sale Motion to the extent it is inconsistent with the rights of Stewart Talent under the Shareholder Agreement; (2) any order approving the sale of Debtor's Assets allow the sale of the Elite Chicago shares subject to the rights of Stewart Talent under the Shareholder Agreement; (3) any order approving the sale of the Elite Chicago shares be conditioned on the purchaser's assumption of the Shareholder Agreement; (4) Debtor be required to cure all monetary and non-

9

monetary defaults under the executory contracts it seeks to assume; and (5) the Court grant such

further relief as it deems appropriate under the circumstances.

Dated:  July 26, 2004                    Respectfully submitted,

                                         SEYFARTH SHAW LLP


                                         /s/ Andrew T. Hahn, Sr._____
                                         Andrew T. Hahn, Sr., Esq. (AH 6283)
                                         SEYFARTH SHAW LLP
                                         270 Avenue of the Americas
                                         Suite 2500
                                         New York, New York  10020-1801
                                         Tel:  (212) 218-5554
                                         Fax: (212) 218-5526


                                         William J. Factor, Esq. (6205675)
                                         Sara E. Lorber, Esq.  (6229740)
                                         SEYFARTH SHAW LLP
                                         55 East Monroe Street, Suite 4200
                                         Chicago, Illinois 60603
                                         Tel:  (312) 346-8000
                                         Fax:  (312) 269-8869


                                         Attorneysfor Stewart Talent Management
                                         Corporation

10

CHI 10735514.1

## CERTIFICATE OF SERVICE

The undersigned non-attorney hereby certifies that she caused a copy of **Stewart Talent Management Corporation's Preliminary and Limited Objection to Debtor's Motion for Orders (I) Approving Bidding Procedures, Including a Break-Up Fee and Expense Reimbursement; (II) Approving Replacement Post-Petition Financing; (III) Scheduling a Sale Approval Hearing; (IV) Approving Form and Manner of Notice; (V) Authorizing and Approving (A) Purchase Agreement with Emmcac, LLC Subject to Higher and Better Offers, (B) Sale of Substantially All of the Debtor's Assets Free and Clear of Liens, Claims, Encumbrances and Other Interests; and (C) Granting Related Relief** to be served upon the following:

Office of the United States Trustee
Attn: Pamela J. Lustrin, Esq.
33 Whitehall Street, 21st Floor
New York, New York  10004
(212) 668-2255

Kramer Levin Naftalis & Frankel LLP
Attn: Robert T. Schmidt, Esq.
919 Third Avenue
New York, New York  10022
(212) 715-8000

via facsimile before the hour of 5:00 p.m. EDT the 26th day of July, 2004.

_____
Jennifer M. McManus

Subscribed and Sworn to before
me this 26th day of July, 2004.

_____
Notary Public

OFFICIAL SEAL
WANDA WILLIAMS-GRIFFIN
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 3-12-2008

CHI 1

11

# EXHIBIT A

## SHAREHOLDER AGREEMENT

**(Available Upon Request)**

# EXHIBIT B



© DWIGHT & M. H. JACKSON
CORPORATION SUPPLY CO.
205 W. RANDOLPH ST.
CHICAGO, ILLINOIS 60606

( RESERVE THIS SPACE TO PASTE BACK CANCELLED STOCK CERTIFICATE )

*Certificate No.* _____2_____ *For* _____500_____ *Shares*

Elite Model Management Corp.

*Dated* _____July 16_____ *19* 83

*Issued to* _____Stewartalent Management Corp._____

*Received this Certificate* _____ *19*___

*Surrendered this Certificate* _____ *19*___

| *Transferred from* | IF NOT AN ORIGINAL ISSUE SHOW DETAILS OF TRANSFER BELOW | | | |
|---|---|---|---|---|
| | *Original Certificate* | | *No. of Origl. Shares* | *No. of Shrs. Transf'd.* |
| | *No.* | *Date* | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

| *New Certificate Issued to* | IF THIS CERTIFICATE IS SURRENDERED FOR TRANSFER SHOW DETAILS | |
|---|---|---|
| | *No. of New Certificate* | *No. of Shares Transferred* |
| | | |
| | | |
| | | |
| | | |