UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

In re:                                            :   Chapter 11
                                                  :
**Elite Model Management Corporation**,           :   Case No. 04-10845 (RDD)
                                                  :
                        Debtor.                   :
                                                  :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

### ORDER APPROVING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS AND GRANTING RELATED RELIEF

The Court has considered the motion (the "Motion") of Elite Model Management

Corporation (the "Debtor" or "Elite New York") under Sections 105(a), 363, 364 and 365 of title

11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), and Rules

2002, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

Rules") for an order (the "Sale Approval Order"), *inter alia*, authorizing and approving (a) the

sale (the "Sale") by the Debtor to EMMCAC, LLC (or the successful bidder at the Auction, as

the case may be (the "Purchaser"), pursuant to the Asset Purchase Agreement annexed hereto as

Exhibit A (the "Purchase Agreement") of substantially all of the Debtor's assets (the "Assets"),

including the Debtor's right, title and interest in certain executory contracts, leases and/or

licenses pursuant to the Purchase Agreement (the "Contracts", and together with the Assets, the

"Purchased Assets") free and clear of all liens, claims, encumbrances and interests other than

those expressly permitted by the Purchase Agreement, and (b) granting related relief, all

objections thereto, and the evidence and argument heard by the Court at the August 24, 2004 sale

hearing (the "Sale Hearing") on the Motion or otherwise submitted to the Court in connection

therewith.  Based upon the foregoing, and good cause appearing therefor, it is hereby

KL2:2276366.4

FOUND AND DETERMINED THAT:[1]

A.    The Court has jurisdiction over the Motion and the transactions contemplated by the Agreement pursuant to 28 U.S.C. § 157(b)(2)(A) and (N).   Venue of these cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

B.    The Court finds that good cause exists to grant the relief requested in the Motion, and that the sale of the Purchased Assets on the terms and conditions and for the purchase price (the "Purchase Price") set forth in the Purchase Agreement and the Motion is in the best interests of the Debtor and its estate.

C.    On July 28, 2004, the Court entered (I) an order (the "Procedures Order"): (a) Approving Bidding Procedures, (b) Approving a Break-Up Fee and Expense Reimbursement; (c) Approving Form and Manner of Notice; and (d) Scheduling an Auction for the sale of the Purchased Assets and a Sale Hearing; and (II) an order (the "Purchaser DIP Order") authorizing the Debtor to obtain Post-Petition Financing pursuant to a DIP loan agreement (the "Purchaser DIP Loan Agreement") with EMMCAC, Ltd. (also referred to herein as the "DIP Lender").

## NOTICE

D.    The notice of the Debtor's proposed Sale in the form approved by the Procedures Order (the "Sale Notice"), having previously been found by the Court in the Procedures Order to be proper and sufficient in form and substance, was timely served on all parties in interest in accordance with the Procedures Order, constitutes proper notice of the Motion, and, along with the publication of the Sale Notice, provided sufficient notice of the sale of the Purchased  Assets. As demonstrated by the testimony and other evidence proffered or adduced at the Sale Hearing

---

[1] Findings of fact and conclusions of law set forth herein are made in accordance with Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate.  See Fed. R. Bankr. P. 7052

2

and based on the representations of counsel at the Sale Hearing, other parties interested in bidding on the Purchased Assets were provided, upon request, sufficient information by the Debtor to make an informed judgment on whether to bid on such assets.  There was adequate opportunity for all parties in interest to appear and be heard on the Motion and the sale of the Purchased Assets proposed thereby and approved hereby.  The Debtor has complied with the procedures set forth in the Procedures Order, including but not limited to the procedures regarding the evaluation of competing bids, the conduct of the auction, and communication with Qualified Bidders (as defined in the Procedures Order) and other parties in interest.

E.    Under the circumstances, a reasonable opportunity to object or be heard regarding the relief requested in the Motion has been afforded to all interested entities, including (i) the Office of the United States Trustee for the Southern District of New York; (ii) the Purchaser; (iii) the members of the Official Committee of Unsecured Creditors (the "Committee"); (iii) counsel to the Debtor's DIP Lender; (iv) counsel to the class action plaintiffs; (v) the Debtor's twenty (20) largest creditors; (vi) all entities known to have expressed an interest in purchasing the Purchased Assets; (vii) all federal, state, and local regulatory or taxing authorities or recording offices which have a known interest in the relief requested by the Motion; (viii) the United States Attorney's office; (ix) the Internal Revenue Service; (x) all non-debtor Parties to Contracts to be assumed and assigned under the Purchase Agreement; (xi) all other entities that have requested notice pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure; and (xii) certain additional entities described on the record at the hearing on the Procedures Order.

F.    The Debtor has presented credible and uncontroverted evidence that the efforts by the Debtor to sell the Purchased Assets were adequate and reasonable to obtain the highest and best offer for the sale of the Purchased Assets.

KL2:2276366.4

**OBJECTIONS; OTHER BIDDERS**

G.       Stewart Talent Management Corporation ("Stewart") filed a limited objection to the Motion on July 26, 2004 and a reservation of rights, thereafter, on August 18, 2004 (collectively, the "Stewart Objection").   Notwithstanding anything herein to the contrary, the property, agreements and rights identified in the Stewart Objection, including the Debtor's rights in the stock of Elite Chicago, shall not presently be transferred, assigned or sold to Purchaser, with such transfer, assignment or sale subject in all respects to the Court's overruling of the Stewart Objection, or Stewart voluntarily withdrawing it, or the Debtor and Stewart entering into a stipulation resolving the Stewart Objection.   The Debtor and Stewart agreed that the Stewart Objection would not be heard at the Sale Hearing, with all parties' rights in respect thereof being reserved, and the Stewart Objection shall be heard at a future hearing before the Bankruptcy Court if necessary.

H.       All other objections to the relief requested in the Motion, have been withdrawn, settled by stipulation, otherwise resolved by the parties or overruled on the merits, for the reasons set forth on the record of the Sale Hearing.

I.       An Auction for the sale of the Purchased Assets was conducted on August 23, 2004 in accordance with the Procedures Order.   At the conclusion of the Auction, the Debtor determined that the final bid in the amount of $7,700,000 submitted by Creative World Management LLC (hereinafter, the "Purchaser") was the highest and best offer for the Purchased Assets.   The aggregate purchase price to be paid by the Purchaser in accordance with the terms of its Purchase Agreement (i) is fair and reasonable, (ii) is the highest or otherwise best offer for the Purchased Assets, (iii) will provide a greater recovery for the Debtor's creditors than would be provided by any other practically available alternative, and (iv) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the

United States. At the Auction, the Debtor also received Qualified Bids (as defined in the Procedures Order) for the Purchased Assets from other bidders, including a bid in the amount of $7,700,000 from EMM Bidco LLC (the "Second Highest Bidder").

## JUSTIFICATION FOR SALE

J.      The Debtor has articulated good and sufficient reasons for entering into the Purchase Agreement and consummating the transactions contemplated thereby, and the articulated reasons constitute a proper exercise of the Debtor's reasonable business judgment. Such business justifications include, but are not limited to, the fact that (i) the Purchaser's offer under the Purchase Agreement constitutes the highest and best bid for the Purchased Assets, (ii) the transactions with the Purchaser contemplated by the Purchase Agreement present the best opportunity to maximize the value of the Purchased Assets and maximize distributions to creditors of the Debtor's estate, and (iii) in accordance with the Procedures Order, the Debtor determined, in good faith, that the Purchaser's offer was the highest and best offer. The sale process conducted by the Debtor, including but not limited to the negotiation of the Purchase Agreement with the Purchaser and the implementation of the bidding procedures provided for in the Procedures Order, was non-collusive, fair and reasonable and conducted in good faith.

K.      As a condition to the Sale and as contemplated by the Motion and the Procedures Order, the Purchaser requires that (i) the Purchased Assets be sold free and clear of any and all liens, claims and encumbrances, whether known or unknown, contingent or otherwise, whether arising prior or subsequent to the commencement of these bankruptcy cases, and whether imposed by agreement, understanding, law, equity or otherwise, including but not limited to, claims otherwise arising under the doctrines of successor liability, other than as expressly assumed by Purchaser pursuant to the Purchase Agreement (collectively, "Encumbrances") and

5

KL2:2276366.4

(ii) the Purchaser has no liability for any Excluded Liabilities (as defined in the Purchase Agreement).

L.      The Debtor may sell the Purchased Assets free and clear of all Encumbrances because in each case, one or more of the standards set forth in sections 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.  The only known holder of a security interest in the Purchased Assets, the DIP Lender, did not object to the Motion.  Any other holder of a lien, claim or interest could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest, and the Encumbrances, if any will attach to the proceeds of the sale of the Purchased Assets to the same extent, validity and priority that they attached to the Purchased Assets prior to the sale.

M.      The transactions contemplated by the Motion, as approved and implemented by this Order, are in compliance with and satisfy all applicable provisions of the Bankruptcy Code including, without limitation, sections 363(b), (e), (f) and (o) and section 365 of the Bankruptcy Code.  The terms and conditions of the sale of the Purchased Assets are fair and reasonable.  The sale of the Purchased Assets outside of a plan of reorganization pursuant to the Purchase Agreement is reasonable and appropriate under the circumstances and does not impermissibly dictate the terms of any plan of reorganization or liquidation of the Debtor.

N.      The transfer of the Purchased Assets at the Closing to the Purchaser for the consideration set forth in the Purchase Agreement is in the best interests of the Debtor's estate and creditors.

### GOOD FAITH –SECTION 363(m)

O.      The Purchase Agreement was proposed, negotiated and entered into by the Debtor and the Purchaser in good faith, from arms' length bargaining positions and without fraud or

collusion.   The Purchaser is not an "insider" or "affiliate" of the Debtor (as each such term is defined in the Bankruptcy Code).   Based on the record of the Sale Hearing, neither the Debtor nor the Purchaser engaged in any conduct that would prevent the application of section 363(m) of the Bankruptcy Code or would allow for the application of section 363(n) of the Bankruptcy Code to the transactions referenced herein.   The Purchaser is a good faith purchaser under section 363(m) of the Bankruptcy Code and in accordance with applicable law, and, as such, is entitled to the protections afforded thereby.

P.   In the absence of a stay pending appeal of this Order, if any, the Purchaser will be acting in good faith within the meaning of section 363(m) of the Bankruptcy Code in closing the transaction contemplated by the Purchase Agreement at any time after the entry of this Order.

**ASSUMPTION AND ASSIGNMENT**

Q.   The Debtor's assumption of the Contracts being assigned pursuant to the Purchase Agreement (the "Assigned Contracts") and the simultaneous assignment of the Assigned Contracts to the Purchaser pursuant to the Purchase Agreement are in the best interest of the Debtor's estate and constitute a proper exercise of the Debtor's reasonable business judgment.

R.   Each of the non-Debtor parties to the Assigned Contracts was served with the Cure Notice as required by the Procedures Order, which included a notice that any non-debtor party was required to object to the assumption and assignment of the applicable Assigned Contract(s)  and/or assert the existence of any and all defaults under the Assigned Contract(s) to which it is a party or be forever barred from asserting any cure claim, loss, liability or default against the assignee of such Assigned Contract(s) based upon events or circumstances arising prior to the assignment.  Any objections to the Cure Notice have been resolved by the parties and are reflected in Exhibit B hereto. Consequently, except as expressly provided in Exhibit B to this Order, no cure payment is due, and the non-Debtor party to each of the Assigned Contracts is not

7

entitled to any compensation for any loss to such party resulting from any default under the Assigned Contracts.

S.    The Purchaser has provided adequate assurance of future performance of the Assigned Contracts in compliance with section 365(b)(1)(C) of the Bankruptcy Code.

T.    Effective as of the Closing, the transfer of the Purchased Assets and the assumption and assignment of the Assigned Contracts in accordance with this Order (i) will be legal, valid, binding and effective transfers of the Purchased Assets, (ii) will be legal, valid, binding and effective assumptions by the Debtor and assignments to the Purchaser of each of the Assigned Contracts, and (iii) will vest the Purchaser with all right, title and interest of the Debtor in and to the Purchased Assets free and clear of all liens, claims, encumbrances and interests under §§ 105, 363(f) and 365 of the Bankruptcy Code.

ACCORDINGLY, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

1.    The Motion is hereby granted.

2.    The findings of fact and conclusions of law set forth above in this Order are hereby ratified and adopted as findings and conclusions of this Court.

**SALE OF PURCHASED ASSETS;
ASSUMPTION AND ASSIGNMENT; PROCEEDS OF SALE**

3.    The sale of the Purchased Assets,  the Purchase Agreement, and each of its terms and conditions are hereby approved in their entirety; and the Debtor is hereby authorized to consummate the Purchase Agreement on the terms set forth therein.

4.    The Debtor is authorized to assume the Assigned Contracts and to assign the Assigned Contracts to the Purchaser pursuant to the terms of the Purchase Agreement.  The Purchaser is directed to pay the applicable Cure Amounts to the holders of Assigned Contracts. If a dispute exists with respect to the Cure Amount for any Assigned Contract, the Purchaser

8

shall pay the amount determined by this Court pursuant to a final, non-appealable order.  The assignment of the Assigned Contracts to the Purchaser shall assign any and all of the Debtor's rights under the Assigned Contracts to the Purchaser.

5.      The Debtor is hereby authorized, in connection with the Closing, to execute and deliver all certificates, bills of sale and other documentation contemplated by, and otherwise to implement and fully perform its obligations under, the Purchase Agreement, together with all additional instruments and documents which may be reasonably necessary, convenient or desirable to implement the terms of the Purchase Agreement, and to take all further actions as may be necessary or appropriate to perform the obligations and effectuate the transactions contemplated by the Purchase Agreement.  All objections to the Motion or the assumption and assignment of the Assigned Contracts that were not withdrawn, settled by stipulation or otherwise resolved by the parties on the record are, for the reasons stated by the Court at the Sale Hearing, overruled on the merits, with the exception of the Stewart Objection, to which all parties' rights are reserved.  Each of the non-Debtor parties to an Assigned Contract that has failed to object to the assignment of the Assigned Contract to the Purchaser or that filed an objection or asserted a default and which objection or assertion of default was overruled, is forever barred from asserting any claim, loss or liability against the Purchaser or the Debtor based upon a claim that arises from or relates to an assertion that the Debtor was in breach of the Assigned Contract prior to the date hereof or that such Assigned Contract could not be assumed or assigned.

6.      At the Closing, the Debtor will sell, transfer, assign and convey to the Purchaser all of Debtor's rights, title and interest in and to the Purchased Assets, including, without limitation, the Assigned Contracts, provided, however, that the assumption and assignment of

9

any Contract that requires an approval or consent by the non-Debtor party pursuant to section 365(c) of the Bankruptcy Code shall not be effective until such approval or consent is obtained. The Debtor is authorized and empowered to deliver at the Closing (and thereafter as requested by the Purchaser) certificates, bills of sale, assignments and such other documentation as may be necessary or reasonably requested by the Purchaser to evidence the transfers contemplated in the Purchase Agreement and this Order.

7.      Pursuant to sections 105(a), 363(b), 363(c), 363(f) and 365 of the Bankruptcy Code, at the Closing the Purchased Assets and all of the Debtor's rights, title and interest therein shall be transferred to the Purchaser free and clear of all Encumbrances arising prior to the Closing.  The Purchaser shall not be liable for any claims that any party may have against the Debtor; provided, however, that the foregoing shall not relieve the Purchaser of liability with respect to Assumed Liabilities expressly assumed by the Purchaser pursuant to Section 2.3 of the Purchase Agreement upon the execution and delivery of the applicable assumption documentation at the Closing.

8.      The Debtor is hereby authorized in accordance with section 365 of the Bankruptcy Code, to assume and assign to the Purchaser each of the Assigned Contracts, in each case free and clear of all Encumbrances (other than the Assumed Liabilities); provided, however, that nothing herein shall provide for the assumption or assignment of any Assigned Contract that requires approval or consent pursuant to section 365(c) of the Bankruptcy Code prior to receiving such approval or consent.  The assumption and assignment of the Assigned Contracts to the Purchaser shall be effective as of the date of the Closing, except with respect to any Contract that requires approval or consent pursuant to section 365(c) of the Bankruptcy Code, the assumption and assignment thereof shall be deemed to occur upon the receipt of approval or

10

consent of the non-Debtor party, and no further action shall be necessary to assign such Contracts to the Purchaser.   Pursuant to Section 365(k) of the Bankruptcy Code, upon assumption and assignment of the Assigned Contracts, except as otherwise provided in the Purchase Agreement, the Debtor and its estate shall be relieved of any further liability under such Assigned Contract including for breach of such Assigned Contracts occurring after such assignment.

9.   The Purchaser shall, pursuant to section 365(f)(2) of the Bankruptcy Code, cure all enforceable defaults under the Assigned Contracts by paying at or prior to the Closing the amounts set forth in the Cure Notice sent pursuant to the requirements of the Procedures Order, or such amounts as agreed to by the parties or fixed by the Court, plus any additional amounts that become due and payable under the Assigned Contracts between the date of this Order and the Closing Date (as defined in the Purchase Agreement);  provided, however, that to the extent there is any dispute over the Cure Amounts that is not already barred or resolved by this Order and/or the Procedures Order, the Purchaser shall pay the Cure Amount determined by this Court pursuant to a final, non-appealable order.

**RELEASE OF LIENS**

10.   This Order is and shall be effective as a determination that, as of the date of the Closing, all Encumbrances existing prior to the Closing shall be unconditionally released and terminated as to the Purchased Assets and the Purchaser (other than Assumed Liabilities under the Purchase Agreement) and that the conveyance described in this Order has been effected. Each and every federal, state and local governmental agency or department is hereby directed to accept for filing or recording this Order (with or without exhibits) and any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the

11

KL2:2276366.4

Purchase Agreement.

11.     Upon the Closing, all Encumbrances will be released, terminated and discharged as to the Purchased Assets, with all such Encumbrances attaching to the proceeds of the sale of the Purchased Assets, in the order of their priority, with the same validity, force and effect which they now have against the Purchased Assets.  The holders of any such Encumbrance shall, upon request of the Purchaser, execute and deliver all documents reasonably necessary to evidence the release of their respective Encumbrances against the Purchased Assets; provided, however, that the failure of any holder of any Encumbrance to execute and deliver any release documentation shall not limit or otherwise reduce the effectiveness of the release, termination and discharge of such Encumbrances provided by this Order; and provided, further that if such holder fails to execute and deliver such release documentation, the Debtor is hereby authorized to execute and file such release documentation on behalf of the person or entity with respect to the Purchased Assets.

## ACCESS TO PURCHASED ASSETS

12.     Upon the Closing, the Purchaser is granted immediate and unfettered access to the Purchased Assets conveyed at the Closing.  The Debtor and each of its employees, officers and directors and any other entity that may have possession or control over items such as keys, lock boxes, security codes, computer access codes, telephone access codes and other similar devices, shall turn over such devices (or control or access to such devices) to the Purchaser immediately upon the Closing as directed by the Purchaser, provided, however, that from and after the Closing Date until the conclusion of Debtor's bankruptcy case, Purchaser shall maintain Debtor's books and records in a manner consistent with Debtor's past practice and such records shall not be destroyed by Purchaser without advance (not less than 30 days) written notice to

Debtor and the Committee.   During such time, Purchaser shall provide Debtor with reasonable access to such records and Purchaser's employees, during business hours on reasonable advance notice, to assist Debtor with respect to the reconciliation of claims and other pending estate matters and causes of action, provided that such access does not materially interfere with the conduct of Purchaser's business.

## JURISDICTION

13.     This Court retains jurisdiction to implement and enforce the terms and provisions of the Purchase Agreement, any amendments, waiver or consents thereto, and this Order, including, without limitation, any disputes relating thereto or with respect to the Sale, the proceeds of the Sale, the transfer or assignment and delivery of the Purchased Assets to the Purchaser and the Purchaser's peaceful use and enjoyment thereof after the Closing free of Encumbrances, and the assumption and assignment of the Assigned Contracts, regardless of whether a plan of reorganization or liquidation has been confirmed in this case and irrespective of the provisions of any such plan or order confirming such plan.

## MISCELLANEOUS

14.     The failure specifically to include in this Order any particular provision of the Purchase Agreement or the related agreements will not diminish the effectiveness of such provision, it being the intent of this Court that the Purchase Agreement and related agreements are authorized and approved in their entirety and incorporated herein by this reference.

15.     Under section 363(m) of the Bankruptcy Code, the reversal or modification of this Order on appeal will not affect the validity of the transfer of the Purchased Assets to the Purchaser, as well as the transactions contemplated or authorized by this Order, unless the same is stayed pending appeal prior to the Closing.

13

KL2:2276366.4

16.     The terms and provisions of the Purchase Agreement and this Order shall be binding in all respects upon, and shall inure to the benefit of, the Debtor, its estate, and creditors, the Purchaser, and their respective affiliates, successors and assigns, and any affected third parties including, but not limited to, all persons asserting Encumbrances in the Purchased Assets, notwithstanding any subsequent appointment of any trustee(s) under any chapter of the Bankruptcy Code, as to which trustee(s) such terms and provisions likewise shall be binding, and notwithstanding anything contained in any plan of reorganization or liquidation confirmed in these cases or the order of confirmation confirming any plan of reorganization or liquidation, or in any order dismissing the case or converting these cases to cases under chapter 7.

17.     The Purchase Agreement and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto in accordance with their terms after consultation with the Committee, without further order of this Court, provided that any such modification, amendment or supplement is not material.

18.     In the event that the transaction approved hereunder does not close or if the Purchase Agreement is terminated, the Debtor is hereby authorized to close a transaction with the Second Highest Bidder at the amount and pursuant to the terms of the highest bid submitted by the Second Highest Bidder at the Auction, without further order of this Court.

19.     A Transaction with the Second Highest Bidder shall be subject to this Order, and the Second Highest Bidder shall be entitled to any and all of the benefits and protections afforded by this Order.

20.     Nothing in this Order shall be construed as a finding in respect of the allocation of the purchase price as between or among the Purchased Assets and the Assigned Contracts.

14

KL2:2276366.4

21.     This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).   The provisions of Bankruptcy Rules 6004(g) and 6006(d) staying the effectiveness of this Order are hereby waived, and this Order shall be effective immediately upon entry hereof.

Dated:        New York, New York
              August 24, 2004

                        /s/ ROBERT D. DRAIN
                         UNITED STATES BANKRUPTCY JUDGE

15

**EXHIBIT A**

**ASSET PURCHASE AGREEMENT**

KL2:2276366.4