**JENKENS & GILCHRIST**
**PARKER CHAPIN LLP**
The Chrysler Building
405 Lexington Avenue
New York, NY 10174
Mitchel H. Perkiel, Esq. (MP - 8418)
Paul H. Deutch, Esq. (PD - 4859)
Attorneys for Elite Model Management
Corporation f/k/a Creative World
Management LLC

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
                                                       :
In re                                                  :       Chapter 11
                                                       :
EMMC, Inc., f/k/a                                      :       Case No. 04-10845 (RDD)
Elite Model Management Corporation,                    :
                                                       :       (Jointly Administered)
                               Debtor.                 :
                                                       :
-------------------------------------------------------x

### OBJECTION OF ELITE MODEL MANAGEMENT CORPORATION, F/K/A CREATIVE WORLD MANAGEMENT LLC, TO FIRST OMNIBUS OBJECTION OF EMMC, INC. TO PROOFS OF CLAIM AND APPLICATION TO AMEND CERTAIN SCHEDULES

Elite Model Management Corporation, f/k/a Creative World Management LLC

("Creative"),[1] hereby submits, by and through its undersigned counsel, its objection to the First

Omnibus Objection of EMMC, Inc. To Proofs Of Claim And Application to Amend Certain

Schedules (the "Claims Objection"), and respectfully represents as follows:

### PRELIMINARY STATEMENT

1.      Creative objects to the Claims Objection to the extent that it seeks to expunge

claims filed by creditors or scheduled claims of creditors listed on Exhibit D to the Claims

---

[1] For the purposes of this Objection, Elite Model Management Corporation is being defined as Creative in order to avoid confusion with the Debtor.

Objection ("Exhibit D") which have <u>not</u> been paid and which have <u>not</u> been assumed (but

suggests that they have been assumed) by Creative pursuant to the Asset Purchase Agreement

(defined below).  The Claims Objection mischaracterizes the terms of the Asset Purchase

Agreement, potentially leading creditors of the Debtor (defined below) whose claims have not

been paid to believe that their claims were assumed and will be paid by Creative when, in fact,

they were not assumed by Creative and Creative is not obligated to pay them.  Accordingly,

Creative requests that before this Court enters any Order(s) granting the relief sought by the

Debtor with respect to Exhibit D, it first require the Debtor to: (i) distinguish those claims on

Exhibit D which have allegedly been paid from those which have been allegedly assumed by

Creative; (ii) re-serve Exhibit D on all affected creditors as well as Creative and the undersigned

as its counsel; and (iii) hold a new hearing with respect to Exhibit D after proper notice has been

given.  It is only by proceeding in this manner that the affected creditors can be assured of the

status of their claims and their entitlement, if any, to payment.

2.      As filed, all objections to the Claims Objection were to be filed with this Court no

later than January 12, 2005 at 12:00 p.m.  Creative received an extension from the Debtor until

January 14, 2005 at 5:00 p.m. in order to try to resolve with the Debtor the perceived

discrepancies regarding assumed and non-assumed claims described in the preceding paragraph.

Because the parties have been unable to fully reach a resolution on such matter, Creative is now

filing this objection in order to preserve its rights.  Nothing contained herein, however, is

intended to prevent the parties from settling the issues raised herein prior to or at the hearing on

the Claims Objection currently scheduled for January 19, 2005 at 10:00 a.m.

### BACKGROUND

3.      Creative and EMMC, Inc. (the "Debtor") are parties to a certain asset purchase

agreement, dated as of August 24, 2004, between Creative, as purchaser, and the Debtor, as seller (the "Asset Purchase Agreement").[2]  On August 24, 2004, this Court entered an Order approving the Asset Purchase Agreement and authorizing the sale of substantially all of the Debtor's assets pursuant to section 363 of the U. S. Bankruptcy Code (11 U.S.C. § 101 *et seq.*) to Creative.

4.    As set forth in Section 2.3 of the Asset Purchase Agreement, Creative assumed some, but not all, of the Debtor's outstanding pre- and post-petition liabilities.  In fact, with few exceptions, Creative did not assume any of the Debtor's pre-petition obligations.  The only obligations of the Debtor which Creative agreed to assume pursuant to the Asset Purchase Agreement are set forth in Section 2.3 of the Asset Purchase Agreement as follows:

(a) All liabilities incurred after the Closing Date with respect to the Purchased Assets and the operation of the Business;

(b) All liabilities under the Purchased Contracts, including any cure payments required to assume the Purchased Contracts pursuant to Section 365 of the Bankruptcy Code (the "Cure Amounts") as reflected on the annexed Schedule 2.3(b);

(c) All pre-petition obligations of Seller due to models and Mother Agencies in respect of all models except those who had terminated their contracts with the Seller on or before the Closing Date or in respect of whom Seller has accrued no revenue since February 11, 2004 and all post-Petition obligations of Seller incurred in the ordinary course of business that remain unpaid on the Closing Date other than (i) fees of bankruptcy professionals and (ii) amounts due under the Existing DIP Loan Agreement, which remain unpaid on the Closing Date;

(d) All employee-related liabilities and obligations described in the annexed Schedule 2.3(d) but, other than severance obligations to bookers who remain employed by the Seller immediately prior to the Closing and amounts owed to employees hired after the date hereof in accordance with Section 5.4(e), not to

---

[2] Unless defined herein, all capitalized terms retain the meanings ascribed to them in the Asset Purchase Agreement.

exceed in the aggregate $200,000;

(e) All liabilities in respect of transfer Taxes resulting from the sale contemplated by this Agreement and, only to the extent that such Taxes are not overdue (after taking all permissible extensions into account), all post-Petition payroll, withholding and sales Taxes for the period covering the calendar month prior to the month in which the Closing occurs and the month in which the Closing occurs (up to and including the Closing Date); and

(f) All liabilities set forth on Schedule 2.3(f).

5.      Section 2.4 of the Asset Purchase Agreement further provides that notwithstanding anything to the contrary in Section 2.3 of the Asset Purchase Agreement, Creative did not assume all of the Debtor's liabilities.  That section reads as follows:

(a) any pre-Petition liabilities and obligations of Seller, in each case in respect of Taxes;

(b) any costs and expenses incurred by Seller incident to the negotiation and preparation of this Agreement and any related agreements and the performance and compliance with the agreements and conditions contained herein and therein; provided that this Section shall not be construed to limit in any way the liabilities or obligations of Purchaser hereunder or under any Purchaser Ancillary Agreement;

(c) any liabilities or obligations related to, or arising from, Seller entering into this Agreement or any related agreement or performing and complying with the agreements and conditions contained herein or therein;

(d) any liabilities or obligations arising from litigation commenced prior to the Closing Date;

(e) any obligations of the Seller under any Contract relating to the period on or prior to the Closing Date, except for the Cure Amounts;

(f) all liabilities of the Seller which were incurred pre-Petition except as otherwise provided in Section 2.3;

(g) all pre-Petition and post-Petition fees of Seller's bankruptcy professionals; and

(h) all obligations that are due or that may become due under the Existing DIP Agreement or Seller's prior Debtor-in Possession Loan Agreement (and related instruments) with Careyes Funding Group, LLC or any other obligation for borrowed money.

6.  Creative has made all required "Cure Amount" payments in accordance with Section 2.3(b) of the Asset Purchase Agreement.

7.  Except as required in the Asset Purchase Agreement, Creative did not assume, nor has it made any payments on, any pre-petition trade debt.

## THE CLAIMS OBJECTION

8.  The Debtor is seeking to expunge the filed claims and scheduled claims listed on Exhibit D to the Claims Objection on the grounds that such debts "have either been paid in full by the Debtor pursuant to prior orders of the Bankruptcy Court or have been assumed by Creative, the purchaser of substantially all of the Debtor's assets." Claims Objection ¶ 14 (emphasis added).

9.  Exhibit D, which contains over two hundred and fifty (250) filed claims and scheduled claims, does not distinguish between those filed claims and scheduled claims which have allegedly been paid from those which have allegedly been assumed by Creative.

10. Creative asserts that, upon information and belief, there are, in fact, filed claims or scheduled claims on Exhibit D which (a) have not been paid by the Debtor, and (b) were not assumed and are not required to be paid by Creative.

## CREATIVE'S OBJECTION TO THE CLAIMS OBJECTION

11.  By failing to specify which filed claims and scheduled claims on Exhibit D were (a) allegedly paid by the Debtor, or (b) allegedly assumed by Creative, the Debtor has created a confusing situation which is misleading to the creditors listed on Exhibit D.  If a creditor whose

filed claim or scheduled claim listed on Exhibit D has not been paid, such creditor will assume that Creative is liable for the payment of such obligation <u>irrespective of whether Creative actually assumed such liability pursuant to Section 2.3 of the Asset Purchase Agreement</u>.

12.     As set forth above, with certain specific exceptions, Creative did not assume the Debtor's pre-petition trade debt.  And yet, upon information and belief, certain trade claims listed on Exhibit D, which Creative did not assume, remain unpaid.  For example, Claim No. 12 was filed by a creditor identified as Print NY LLC in the amount of $18,509.90.  Upon information and belief, part of this claim has been paid down by the Debtor although an amount in excess of $3,000 remains unpaid.  However, in accordance with Sections 2.3 and 2.4 of the Asset Purchase Agreement, Creative did not assume the liability asserted by Print NY LLC in such claim.

13.     Creative is also aware of other filed claims and scheduled claims listed on Exhibit D which, upon information and belief, remain unpaid and which clearly were not assumed by Creative pursuant to the Asset Purchase Agreement:[3]

| Claim # | Schedule # | Vendor | $ Claimed | $ Scheduled |
|---|---|---|---|---|
| 70 | 0 | Citicorp Vendor Finance | $3,240.65 | |
| 53 | 0 | The State Insurance Fund | $772.18 | $772.18 |
| 72 | 0 | Citicorp Vendor Finance | $37,421.18 | $0.00 |

14.     Creative believes that there may be more filed claims and/or scheduled claims listed on Exhibit D which (a) remain unpaid, and (b) have not been assumed and are not required to be paid by Creative pursuant to Sections 2.3 and 2.4 of the Asset Purchase Agreement.  Creative further believes that the only way to determine the extent of such claims, and any liability arising therefrom, is to require the Debtor to reprocess its motion as it relates to the

---

[3] The following is in no way intended to be an exclusive list of those filed or scheduled claims which Creative believes are unpaid and which it did not assume.

parties identified on Exhibit D and to amend Exhibit D so as to clearly distinguish the claims which have allegedly been paid from those which have allegedly been assumed by Creative.

## CONCLUSION

15.    Because the Debtor has failed to distinguish the filed claims and scheduled claims listed on Exhibit D as between those which have been paid and those which have been assumed by Creative, it has created a confusing situation which is misleading to creditors and which mischaracterizes the terms and provisions of the Asset Purchase Agreement.  Accordingly, Creative hereby requests that before any Order(s) can be entered granting the relief sought by the Debtor with respect to Exhibit D, the Debtor be required to: (i) properly and clearly distinguish those claims on Exhibit D which have allegedly been paid from those which have been allegedly assumed by Creative, (ii) re-serve Exhibit D on all affected creditors as well as Creative and its counsel, and (iii) hold a new hearing with respect to Exhibit D after proper notice has been given.

Dated:  New York, New York
             January 14, 2005

**Jenkens & Gilchrist Parker Chapin LLP**
Attorneys for Elite Model Management
Corporation f/k/a Creative World
Management LLC

By:            /s/ Paul H. Deutch

Mitchel H. Perkiel (MP - 8418)
Paul H. Deutch (PD – 4859)
The Chrysler Building
405 Lexington Avenue
New York, NY  10174
Telephone:  (212) 704-6000

NEWYORK 1026901v7 58194-00001 01/14/2005

7